IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

REX I. HATFIELD and
EVERLY K. HATFIELD

      Petitioners,

v.                                                                Case No. 5:18-cv-01265


D.L. YOUNG, Warden,
FCI Beckley

      Respondent.


## PROPOSED FINDINGS AND RECOMMENDATIONS

Pending before the Court are Petitioners' *pro se* Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241, (ECF No. 1), and Respondent's Motion to Dismiss, or in the Alternative, to Transfer, (ECF No. 14). This matter is assigned to the Honorable Irene C. Berger, United States District Judge, and by Standing Order has been referred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). For the following reasons, the undersigned **RECOMMENDS** that Petitioners' Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241, (ECF No. 1), be **DENIED**; that Respondent's Motion to Dismiss, (ECF No. 14), be **GRANTED**; and that this action be **DISMISSED,** with prejudice, and removed from the docket of the Court.

## I.  Factual and Procedural Background

On January 25, 2008, a federal grand jury, sitting in the Southern District of Illinois, returned an indictment charging Rex I. Hatfield and his brother, Everly K.

Hatfield, ("Petitioners") with conspiracy to commit multi-state pharmacy burglaries in violation of 18 U.S.C.A. § 2118(b) and (d) ("Count One"); and conspiracy to distribute and possess with intent to distribute controlled substances, including morphine, methadone, oxycodone, fentanyl, alprazolam, cocaine, and hydrocodone, the use of which resulted in death or serious bodily injury in violation of 21 U.S.C.A. § 846 and 21 U.S.C.A. § 841(a)(1) and (b)(1)(C) ("Count Two"). *See United States v. Hatfield et al.,* Case No. 3:08-cr-30020-DRH-PMF (S.D. Ill. Jan. 25, 2008) (hereafter "*Hatfield I*") at ECF No. 1. The indictment specifically charged Petitioners with knowingly and intentionally distributing controlled substances, which resulted in the deaths of five victims and the serious bodily injury of a sixth. *Id.* at 4-5. The conspiracies were alleged to have taken place "[b]etween June 16, 1998 and April 13, 2004, in Madison County, Illinois, and in Virginia, West Virginia, Tennessee, Missouri, and elsewhere." *Id.* at 1-2. On May 22, 2008, the grand jury returned a superseding indictment that charged Petitioners with the same offenses, but amended the dates of the conspiracies to between June 16, 1998 and February 3, 2004. *Id.* at ECF No. 43 at 1-2.

Petitioners' trial began on October 6, 2008 in the United States District Court for the Southern District of Illinois ("District Court"). *Id.* at ECF No. 127.  At trial, the United States informed the jury that the evidence would show Petitioners entered into a concerted conspiracy to rob pharmacies across multiple states. *Hatfield I,* Case No. 3:08-cr-30020-DRH-PMF at ECF No. 250 at 6-8. Petitioners planned and engaged in the robberies in order to acquire controlled substances, which they would then sell through various intermediaries. *Id.* at 8-11. The jury was told that it would be charged with determining whether Petitioners had distributed drugs resulting in the deaths of five individuals and the serious bodily injury of a sixth. *Id.* at 11-22. According to the United

States, Petitioners intentionally arranged several of the deaths in order to prevent potential witnesses from testifying against them. *Id.* at 12-13, 15-16.

On October 29, 2008, following a fourteen-day trial, the jury returned a verdict finding Petitioners guilty on all counts. *Id.* at ECF No. 167 at 1. On a special verdict form, the jury additionally found that Petitioners were guilty of delivering controlled substances, which resulted in four deaths and one serious bodily injury, acquitting Petitioners of only one of the charged deaths. *Id.*

On November 26, 2008, Petitioners filed a Joint Motion for a New Trial, arguing that the jury had received erroneous instructions regarding the special verdict and that various inaccurate evidentiary rulings compelled a new trial. *Hatfield I,* Case No. 3:08-cr-30020-DRH-PMF at ECF No. 196 at 1. The motion was denied on January 12, 2009. *Id.* at ECF No. 207. Following a sentencing hearing held on January 30, 2009, Petitioners both received a sentence of life imprisonment on Count Two and 120 months imprisonment on Count One, with the sentences to run concurrently. *Id.* at ECF Nos. 216, 220, 235.

In January 2010, the United States Court of Appeals for the Seventh Circuit ("Seventh Circuit") considered Petitioners' argument that the jury instructions did not appropriately explain the causal standard of § 841(b)(1)(C). *See United States v. Hatfield*, 591 F.3d 945, 947 (7th Cir. 2010) (hereafter "*Hatfield II*"). Section 841(b)(1)(C) authorizes a life sentence when a defendant is convicted of illegally distributing certain controlled substances under § 841(a)(1) "if death or serious bodily injury results from the use of such substance." 21 U.S.C.A. § 841(b)(1)(C). On appeal, Petitioners challenged the jury instructions regarding the statutory "results from" language, arguing that the District Court erred by permitting language which informed the jury that "results from" could

3

mean that the controlled substances provided by Petitioners were merely "a factor" which "played a part" in the subsequent deaths of the victims. *Hatfield II,* 591 F.3d at 947. The Seventh Circuit agreed with Petitioners' argument that the "results from" language meant that the government must establish that controlled substances supplied by a defendant were a "but-for" cause of a victim's death in order to obtain a conviction under § 841(b)(1)(C), and that in Petitioners' case, the jury instructions permitted the jury to find Petitioners guilty under a lesser standard of causation. *Id.* at 948. The Seventh Circuit reversed and remanded for retrial the special verdict findings that Petitioners were guilty of distributing drugs which resulted in death under § 841(b)(1)(C). *Id.* at 953. However, as the "convictions for conspiracy to burglarize pharmacies and distribute controlled substances were supported by overwhelming evidence unrelated to the evidence of the causes of the injury and death," the remand was "limited to the 'results from' charge," leaving the convictions under Counts One and Two otherwise undisturbed. *Id.*

Following remand, the United States elected not to retry Petitioners for distributing drugs resulting in death and serious bodily injury, and instead requested that the District Court dismiss the language pertaining to the "death resulting" convictions under § 841(b)(1)(C) from the indictment. *See Hatfield I,* Case No. 3:08-cr-30020-DRH-PMF at ECF No. 279. On April 29, 2010, the District Court, over Petitioners' objections, granted the United States' request and dismissed the portions of the indictment which alleged violations of § 841(b)(1)(C). *Id.* at ECF No. 281. Resentencing on the remaining portions of Counts One and Two was set for June 11, 2010 and later reset for September 10, 2010. *Id.* at ECF Nos. 281, 289.

Petitioners filed a Motion for New Trial in August 2010, arguing that the United States suppressed exculpatory evidence and knowingly presented false testimony at trial.

*Id.* at ECF No. 292 at 1. The District Court denied the Motion on November 2, 2010, finding that, although the United States did violate its duties to disclose exculpatory evidence and avoid presenting false testimony, any such violations were not material due to the limited relevance of the errors and the overwhelming nature of the other evidence presented at trial. *Id.* at ECF No. 308 at 25.

Petitioners' joint resentencing hearing was held on December 3, 2010. *Hatfield I,* Case No. 3:08-cr-30020-DRH-PMF at ECF No. 352. In calculating Petitioner Rex Hatfield's adjusted offense level, the District Court applied § 2D1.1(d)(1) of the United States Sentencing Guidelines ("USSG"), known as the "cross-reference to murder." *Id.* at 39. The District Court based this application of the cross-reference on its determination, by clear and convincing evidence, that the United States established at trial that Rex Hatfield had knowingly killed three individuals. *Id.* at 34, 39-40. The application of the cross-reference resulted in a base offense level of 43, which was increased to a total adjusted offense level of 49 after the District Court concluded that Rex Hatfield was subject to a four-level increase for his leadership role in the conspiracy, as well as a two-level increase for obstruction of justice. *Id.* at 40. This was reduced to an offense level of 43, the highest offense level available in the offense level Guidelines chart. *Id.* When combined with Rex Hatfield's criminal history category of V, the Guidelines sentence range was life imprisonment. *Id.* at 41, 45.

The District Court conducted a similar analysis for Petitioner Everly Hatfield, determining by clear and convincing evidence that he had caused the premeditated deaths of two individuals and was also subject to the cross-reference for murder enhancement contained in USSG § 2D1.1(d)(1). *Hatfield I,* Case No. 3:08-cr-30020-DRH-PMF at ECF No. 352 at 43. Everly Hatfield received the same enhancements for his leadership role

and obstruction of justice, resulting in a final offense level of 43, which was the maximum level allowed by the Guidelines. *Id.* at 43-44. The District Court determined that Everly Hatfield had a Criminal History Category of IV, giving him a Guidelines sentence of life imprisonment. *Id.* at 44-45.

As to both Petitioners, the District Court concluded that the suggested Guidelines sentence of life imprisonment exceeded the statutory maximum sentences of 120 months on Count One and 240 months on Count Two. Consequently, the statutory maximum sentences became the Guidelines sentence. *Id.* at 45. When considering the appropriate sentence, the District Court noted that it was "convinced without any question that [Petitioners] through their distribution of drugs, deliberately killed certain individuals, that these crimes are extraordinarily serious." *Id.* at 48. The District Court further found that Petitioners had killed several victims due to a perceived belief that the victims were preparing to testify against them, or take other actions that might result in Petitioners' conspiracy being discovered. *Id.* at 49-50, 52. Accordingly, the District Court imposed the statutory maximum sentence of 120 months on Count One and 240 months on Count Two, to be served consecutively, for both Petitioners. *Hatfield I,* Case No. 3:08-cr-30020-DRH-PMF at ECF Nos. 330, 336, 352 at 53. The District Court additionally imposed a three-year term of supervised release and a $200 special assessment for both Petitioners; a $172,539.19 restitution payment for Petitioner Rex Hatfield; and a $250,181.03 restitution payment for Petitioner Everly Hatfield. *Id.*

Petitioners appealed both the sentences imposed, as well as the District Court's decision to deny their earlier motion requesting a new trial. *Id.* at ECF Nos. 340, 343. On June 14, 2011, the Seventh Circuit found that the District Court's denial of the motion for new trial was appropriate and affirmed Petitioners' sentences. *United States v. Hatfield*,

423 F. App'x 648, 649 (7th Cir. 2011). The Supreme Court of the United States ("Supreme Court") denied certiorari on October 31, 2011. *Hatfield v. United States*, 565 U.S. 988 (2011).

On March 19, 2012, Petitioners filed motions requesting discovery of the grand jury transcripts in preparation for their § 2255 motions. *Hatfield I,* Case No. 3:08-cr-30020-DRH-PMF at ECF Nos. 356, 357. The District Court denied the requested discovery on March 20, 2012, and Petitioners appealed the denial. *Id.* at ECF Nos. 358, 362, 363. On March 22, 2012, Petitioners filed motions seeking the recusal of Chief Judge David R. Herndon, who had presided over their trial, sentencing, and resentencing. *Id.* at ECF Nos. 359, 360. Petitioners reported that they had filed various judicial misconduct complaints against Chief Judge Herndon, and had contacted the news media and Congress regarding his alleged impropriety, and these actions meant Chief Judge Herndon could no longer rule impartially on their case. *Id.* at 1-2. The District Court denied the Motions for recusal on March 23, 2012. *Id.* at ECF No. 361.

On October 18, 2012, Petitioners each filed a Motion to Vacate, Set Aside or Correct Sentence under § 2255. *Hatfield v. United States,* Case No. 3:12-cv-01110-DRH (S.D. Ill. Oct. 18, 2012) at ECF No. 1 (Petitioner Everly Hatfield) (hereafter *"Hatfield III"*); *Hatfield v. United States,* Case No. 3:12-cv-01111-DRH (S.D. Ill. Oct. 18, 2012) at ECF No. 1 (Petitioner Rex Hatfield) (hereafter *"Hatfield IV"*). Petitioners filed contemporaneous Motions seeking joinder of their § 2255 petitions and again requesting that Chief Judge Herndon be recused. *Hatfield III,* Case No. 3:12-cv-01110-DRH at ECF Nos. 2, 3; *Hatfield IV,* Case No. 3:12-cv-01111-DRH at ECF Nos. 2, 3.

On November 20, 2012, the Seventh Circuit dismissed as frivolous Petitioners' appeals of the District Court's denial of their discovery requests. *Hatfield I,* Case No. 3:08-

cr-30020-DRH-PMF at ECF No. 370. On January 3, 2013, the District Court denied Petitioners' motions seeking joinder and recusal. *Hatfield III,* Case No. 3:12-cv-01110-DRH at ECF No. 4; *Hatfield IV,* Case No. 3:12-cv-01111-DRH at ECF No. 4. As to the recusal demand, the District Court denied the motion on the grounds that it could not "allow the legal system to be manipulated by criminal defendants filing frivolous complaints and engaging in defamatory letter writing campaigns against judges just to try to judge shop on the theory that the judge will be unable to perform his constitutional duties faithfully or to create some inference of such an issue." *Id.* at 2-3. On October 31, 2013, Petitioners filed a motion asking that the prosecutor assigned to their criminal case be found criminally liable for falsifying documents during their trial. *Hatfield I,* Case No. 3:08-cr-30020-DRH-PMF at ECF No. 371 at 1. The District Court denied this request on November 12, 2013. *Id.* at ECF No. 372.

On October 7, 2014, the District Court denied Petitioners' § 2255 motions in two virtually identical opinions. *Hatfield III*, No. 3:12-CV-01110-DRH, 2014 WL 5023623 (S.D. Ill. Oct. 7, 2014); *Hatfield IV,* No. 3:12-CV-01111-DRH, 2014 WL 5023201 (S.D. Ill. Oct. 7, 2014). Petitioner Rex Hatfield raised seven constitutional claims for relief and twenty-four claims of ineffective assistance of counsel, while Petitioner Everly Hatfield raised six constitutional claims for relief and twenty-four claims of ineffective assistance of counsel. *Id.* In one of several motions to amend, Petitioners additionally sought to add claims based on the recent Supreme Court decision in *Alleyne v. United States*, 133 S.Ct. 2151 (2013), arguing that the case established that the Guidelines enhancements they received violated the Sixth Amendment prohibition against judge-found facts that increase a mandatory minimum sentence. *Id.* at *2.  The District Court determined that all of Petitioners' claims, including those in their various motions to amend, lacked merit,

and dismissed their § 2255 petitions with prejudice. *Hatfield III,* No. 3:12-CV-01110-DRH, 2014 WL 5023623, at *6; *Hatfield IV,* No. 3:12-CV-01111-DRH, 2014 WL 5023201, at *7. The District Court additionally declined to issue a certificate of appealability. *Id.*

Petitioners appealed the denial of their § 2255 petitions to the Seventh Circuit on November 26, 2014. *Everly K. Hatfield v United States,* Case No. 14-3600, Seventh Circuit Court of Appeals, Document No. 1; *Rex. I. Hatfield v. United States,* Case No. 14-3607, Seventh Circuit Court of Appeals, Document No. 1. Meanwhile, Petitioners filed contemporaneous motions in the District Court seeking to have their sentences reduced under 18 U.S.C. § 3582(c) based on amendments to the drug quantity guidelines. *Hatfield I,* Case No. 3:08-cr-30020-DRH-PMF at ECF Nos. 373, 374. On March 27, 2015, the Seventh Circuit rejected Petitioners' appeal of the District Court's denial of their § 2255 petitions, construing their appeal as a request for a certificate of appealability, and determining that they had not demonstrated the denial of any constitutional rights. *E. Hatfield,* Case No. 14-3600 at Document No. 13; *R. Hatfield,* Case No. 14-3607 at Document No. 15.

On May 26, 2015, Petitioners filed motions for recusal, seeking Chief Judge Herndon's removal from ruling on their motions requesting relief under 18 U.S.C. § 3582(c). Petitioners alleged that Chief Judge Herndon had "left a paper trail of his frivolous rulings and blatant retaliation that a blind man could see." *Hatfield I,* Case No. 3:08-cr-30020-DRH-PMF at ECF Nos. 391 at 2, 392 at 2. The District Court denied the motions, finding that Petitioners were again attempting to manipulate the legal system by filing defamatory actions in an attempt to find a more favorable judge *Id.* at ECF Nos. 393 at 3, 394 at 3. On August 31, 2015, the District Court further denied Petitioners' motions requesting relief under 18 U.S.C. § 3582(c), holding that Petitioners' sentences

were not based on a calculation of drug quantity as required to be entitled to relief under the statute, but "were calculated under §2A1.1(a), under a cross-reference to first degree murder." *Id.* at ECF Nos. 401 at 3, 402 at 3.

On November 19, 2015, Petitioners filed applications seeking permission from the Seventh Circuit to file a second or successive petition for collateral review under § 2255. *Everly K. Hatfield v United States,* Case No. 15-3600, Seventh Circuit Court of Appeals, Document No. 1; *Rex. I. Hatfield v. United States,* Case No. 15-3599, Seventh Circuit Court of Appeals, Document No. 1. The Seventh Circuit dismissed both applications on December 1, 2015. *Id.* at Document Nos. 2. As to Petitioner Everly Hatfield's application, the Seventh Circuit noted that the claims therein pertained only to Rex Hatfield and appeared to have been signed only by Rex Hatfield, and thus dismissed the application without prejudice. *Hatfield,* Case No. 15-3600 at Document No. 2. However, the Seventh Circuit dismissed, with prejudice, Petitioner Rex Hatfield's application on the grounds that he had already raised several of the constitutional claims in previous filings; that the allegedly new facts he relied on were not in fact new; and that, in any case, the allegedly new evidence did not implicate his innocence. *Hatfield,* Case No. 15-3599 at Document No. 2 at 1-2.

On May 9, 2017, Petitioners filed yet another round of applications seeking permission from the Seventh Circuit to file a second or successive petition for collateral review under § 2255. *Everly K. Hatfield v United States,* Case No. 17-1983, Seventh Circuit Court of Appeals, Document No. 1; *Rex. I. Hatfield v. United States,* Case No. 17-1982, Seventh Circuit Court of Appeals, Document No. 1. The Seventh Circuit denied Petitioners' applications on May 16, 2017 stating:

> [T]he brothers argue that their sentences are inconsistent with *Burrage v. United States*, 134 S. Ct. 881 (2014). But authorization is barred by § 2255(h)(2) unless applicants rely on a new rule and *Burrage* is not new with respect to either Rex or Everly. It was decided in January 2014, about nine months before their first § 2255 motions were denied in the district court. And *Burrage* analyzes the requirements of a statute; it does not establish a constitutional rule, as is also required for authorization under § 2255(h)(2). Anyway, this court reversed their convictions for causing deaths and injury—the subject of *Burrage*—and the government did not pursue those charges on remand. Accordingly, their sentences do not violate *Burrage*.

*Id.* at Document Nos. 2 at 1-2. On June 8, 2017, Petitioners both filed a Motion and Supporting Brief Pursuant to Rule 60(b)(6) of Federal Rules of Civil Procedure, arguing that they were sentenced in error based on recent Seventh Circuit decisions in *United States v. Lawler*, 818 F.3d 281 (7th Cir. 2016) and *Krieger v. United States*, 842 F.3d 490 (7th Cir. 2016). *Hatfield III,* Case No. 3:12-cv-01110-DRH at ECF No. 50 at 5-6; *Hatfield IV,* Case No. 3:12-cv-01111-DRH at ECF No. 60 at 3-4. Petitioners believed that these cases changed existing law, and the law now required that the factual basis for application of a sentence enhancement under USSG §2D1.1(d)(1) required the use of a "beyond a reasonable doubt" standard, rather than the "preponderance of the evidence" standard purportedly used by the District Court. *Id.*

On November 8, 2017, the District Court dismissed Petitioners' Rule 60(b)(6) motions. *Hatfield III,* Case No. 3:12-cv-01110-DRH at ECF No. 61; *Hatfield IV,* Case No. 3:12-cv-01111-DRH at ECF No. 75. The District Court first determined that Petitioners' Rule 60(b)(6) motions were actually requests for successive § 2255 habeas relief, which were filed without first seeking approval from the Seventh Circuit, making them subject to immediate dismissal. *Id.* at 3-4. The District Court went on to note that Petitioners had failed to preserve the issue as it had not been raised on appeal, and that "neither *Lawler* nor *Krieger* announce[d] a new and retroactive rule of constitutional law." *Id.* at 5 n.5.

For these reasons, the District Court dismissed the construed § 2255 petitions. *Id.* at 6.

Petitioners appealed the District Court's decision to the Seventh Circuit on November 22, 2017. *Hatfield III,* Case No. 3:12-cv-01110-DRH at ECF No. 62; *Hatfield IV,* Case No. 3:12-cv-01111-DRH at ECF No. 76. On December 12, 2017, the Seventh Circuit considered Petitioners' Motion for Permissive Joinder of Parties and permitted the appeals to be consolidated for the purposes of briefing and disposition. *Rex. I. Hatfield v. United States,* Case No. 17-3406, Seventh Circuit Court of Appeals, Document No. 5. On August 24, 2018, the Seventh Circuit denied Petitioners' appeal of the District Court's denial of their § 2255 petitions, concluding that Petitioners failed to make "a substantial showing of the denial of a constitutional right in either case." *Id.* at Document No. 17 at 1.

Four days later, on August 28, 2018, Petitioners filed the instant § 2241 petition in this Court. (ECF No. 1 at 8). Petitioners contend that they are "being held in violation of the Constitution and laws of the United States" and that a motion under § 2255 is "inadequate and ineffective to test the legality of their detention." (ECF No. 3 at 6). Petitioners base their argument on the Supreme Court decision in *Burrage v. United States*, 134 S. Ct. 881 (2014), as well as two Seventh Circuit decisions: *United States v. Lawler*, 818 F.3d 281 (7th Cir. 2016) and *Krieger v. United States*, 842 F.3d 490 (7th Cir. 2016). (*Id.* at 13-14). Petitioners believe that these decisions entitle them to have their convictions overturned and to be resentenced. (*Id.* at 15). Petitioners filed an additional motion requesting leave for permissive joinder. (ECF No. 2).

On September 21, 2018, the undersigned ordered Respondent to file a response to Petitioners' request to be allowed to proceed jointly. (ECF No. 9). On October 11, 2018, Respondent answered the order, stating that he did "not oppose Petitioners' motion for

joinder, and defer[ed] to the Court's judgment" on the issue. (ECF No. 10 at 1). On October 19, 2018, the undersigned issued an Order granting Petitioners' request for permissive joinder. (ECF No. 11 at 2). The undersigned noted that Petitioners had been co-defendants and had filed a joint direct appeal and "that while the joinder of two or more petitioners in one petition is not a common practice in habeas corpus proceedings, joinder is permitted by Rule 20 of the Federal Rules of Civil Procedure and Rule 12 of the Rules Governing Habeas Corpus Cases." (*Id.* at 1-2). Furthermore, "[i]n this case, permissive joinder may be preferable, given that the Petitioners wish to pursue relief together and a single action would aid the goal of judicial economy." (*Id.* at 2). The undersigned additionally ordered Respondent to file an answer to Petitioners' § 2241 petition within 60 days of the date the order was filed. (*Id.*).

On January 16, 2019, Respondent filed a Motion to Dismiss, or in the Alternative, to Transfer and a supporting Memorandum. (ECF Nos. 14, 15). Respondent contends that as Petitioners are challenging the validity of their sentences, and not the execution of the sentences, their claim is inappropriately labeled as a § 2241 petition and should be instead brought under § 2255. (ECF No. 15 at 5-6). Respondent further argues that Petitioners do not meet the limited "savings clause" contained in § 2255(e), which permits a federal prisoner to bring a habeas challenge under § 2241 when his remedy under Section 2255 is inadequate or ineffective to test the legality of his detention. (*Id.* at 6-7). The savings clause is not applicable, according to Respondent, because Petitioners are challenging an advisory guidelines enhancement which, even if applied in error, does not rise to the level of a "fundamental defect" as required to utilize the savings clause. (*Id.* at 7). Respondent additionally argues that, regardless of whether a Guidelines error is cognizable under § 2241, the District Court did not err in sentencing Petitioners and Petitioners' argument

that the law has subsequently changed, rendering their sentence invalid, is inaccurate. (*Id.* at 8). Finally, Respondent argues that if this Court construes Petitioners' § 2241 petition as a mislabeled § 2255 petition, it should dismiss the petition as clearly meritless, or, barring that, transfer it to the Southern District of Illinois or the Seventh Circuit. (*Id.* at 11-12).

Petitioners filed a Reply in Support of Petitioners' Motion Objecting to Respondent's Motion to Dismiss, or in the Alternative, to Transfer on March 19, 2019. (ECF No. 18). Petitioners attached several exhibits to their Reply, including excerpts from their trial, evidentiary hearing, and sentencing hearing. (ECF Nos. 18, 19). Petitioners dispute Respondent's contention they are not entitled to relief via a number of arguments, several of them raised for the first time in the Reply. Petitioners contend that the decision in *Burrage* establishes that their enhancements under the cross-reference for murder were incorrectly applied. (ECF No. 18 at 6). Petitioners note that the Seventh Circuit determined *Burrage* should apply retroactively on collateral review in *Krieger*. (*Id.* at 12). Petitioners disagree with Respondent's contention that the Seventh Circuit decision in *Lawler* does not apply to their case. (*Id.* at 26). Petitioners believe these cases, in conjunction with the Supreme Court decision in *Alleyne v. United States*, 133 S.Ct. 2151 (2013), make clear that the application of the cross-reference for murder enhancement to their sentences is now invalid, because the law now requires that a jury make the determination, beyond a reasonable doubt and applying the "but-for" standard of causation, that Petitioners caused the deaths in order for the enhancement to apply. (*Id.* at 12-13).

Petitioners additionally cite to the Supreme Court case, *Nelson v. Colorado*, 137 S. Ct. 1249 (2017), which they believe establishes that they were punished in violation of the

presumption of innocence which was restored following the Seventh Circuit's vacation of their convictions under § 841(b)(1)(C). (*Id.* at 14-15). Petitioners also raise a new argument, contending that the District Court inappropriately applied the cross-reference for murder as it involved "separate uncharged dismissed conduct that was not part of the offense of conviction." (*Id.* at 16-17). Finally, Petitioners assert that the application of both the murder enhancement and the obstruction of justice enhancement resulted in impermissible "double counting." (*Id.* at 28). In regard to Respondent's contention that a Guidelines sentencing error is not generally cognizable under habeas review, Petitioners assert that they are barred from seeking this relief under § 2255; therefore, they have no recourse but to utilize the savings clause of § 2241. (*Id.* at 27).

## II.    <u>Analysis</u>

### *A. The Petition as a § 2241 Motion*

Petitioners are clearly challenging the legality of their sentences, rather than the execution of the sentences. (ECF Nos. 1, 18). Accordingly, Petitioners' action is properly brought under 28 U.S.C. § 2255, which is the exclusive remedy for challenging the validity of a federal judgment and sentence. *See In re Vial*, 115 F.3d 1192, 1194 (4th Cir. 1997). Although § 2241 provides a general grant of habeas corpus authority, the remedy under § 2241 is not an additional, alternative, or supplemental remedy to that prescribed under § 2255.

However, § 2255(e) provides a "savings clause" exception, which serves as a means for petitioners to apply for a traditional writ of habeas corpus pursuant to § 2241. It states:

> An application for a writ of habeas corpus in behalf of a prisoner who is authorized to apply for relief by motion pursuant to this section, shall not be entertained if it appears that the applicant has failed to apply for relief, by motion, to the court which sentenced him, or that such court has denied him relief, *unless it also appears that the remedy by motion is inadequate*

15

*or ineffective to test the legality of his detention.*

28 U.S.C. § 2255(e) (emphasis added). The savings clause will occasionally allow a § 2241 petition to take the place of a § 2255 motion, but not "merely ... because an individual is procedurally barred from filing a Section 2255 motion," *Vial*, 115 F.3d at 1194 n.5, nor simply because relief is unavailable due to the gatekeeping provisions of § 2255. *Young v. Conley*, 128 F.Supp.2d 354, 357 (S.D.W. Va. 2001). Instead, to trigger the savings clause in the context of a challenge to the validity of a conviction, the petitioner's claim must contain all three of the following characteristics: (1) at the time of his conviction, the settled law of the circuit or the Supreme Court established the legality of his conviction; (2) subsequent to his direct appeal and first § 2255 motion, the substantive law changed such that the conduct of which he was convicted is now deemed not to be criminal; and (3) he cannot satisfy the gatekeeping provisions of § 2255 because the new rule is not one of constitutional law. *In re Jones*, 226 F.3d at 328, 333-34 (4th Cir. 2000). With respect to challenges involving the validity of a sentence, the savings clause is available only when the petitioner can establish that: (1) at the time of sentencing, settled law of the circuit or the Supreme Court established the legality of the sentence; (2) subsequent to his direct appeal and first § 2255 motion, the aforementioned settled substantive law changed and was deemed to apply retroactively on collateral review; (3) he cannot satisfy the gatekeeping provisions of § 2255(h)(2) for second or successive motions; and (4) due to this retroactive change, the sentence now presents an error sufficiently grave to be deemed a fundamental defect. *United States v. Wheeler*, 886 F.3d 415, 429 (4th Cir. 2018). The United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") held in *Wheeler* that the savings clause requirements are jurisdictional rather than procedural; therefore, if they are not met, the court does not have jurisdiction to entertain the § 2241

petition. *Id*. at 426. The petitioner bears the burden of establishing that a § 2255 motion is inadequate or ineffective and that he satisfies the savings clause requirements. *See Hood v. United States*, 13 Fed.Appx. 72, 2001 WL 648636, at *1 (4th Cir. 2001); *McGhee v. Hanberry*, 604 F.2d 9, 10 (5th Cir. 1979); *Hayes v. Ziegler*, No. 5:11-cv-00261, 2014 WL 670850 (S.D.W. Va. Feb. 20, 2014), *aff'd*, 573 Fed.Appx. 268 (4th Cir. 2014).

Petitioners are correct in noting that courts in this circuit have generally found "that the substantive law relevant to a § 2241 petition is that of the circuit in which the petitioner was convicted." *Chaney v. O'Brien*, No. CIV.A. 7:07CV00121, 2007 WL 1189641, at *3 (W.D. Va. Apr. 23, 2007), *aff'd,* 241 F. App'x 977 (4th Cir. 2007). "Application of the law of the place of conviction is a consistent, reasonable rule, as is evidenced by the requirement that § 2255 motions be filed in the district of conviction." *Hernandez v. Gilkey*, 242 F. Supp. 2d 549, 554 (S.D. Ill. 2001). Moreover, applying the law of the court of confinement would result in the choice of law being based "on the fortuitous placement of a prisoner by the Bureau of Prisons, not the more rational factor of the place of conviction." *Chaney,* No. CIV.A. 7:07CV00121, 2007 WL 1189641, at *3 (internal quotation omitted). This could result in inequitable outcomes such as co-defendants convicted of the same crimes receiving different relief based on the location of their confinement. *Id.* For these reasons, when analyzing a federal inmate's § 2241 petition, courts in this circuit have generally applied the substantive law of the court of conviction when it differs from the substantive law of the reviewing court's circuit. *See Eames v. Jones,* 793 F. Supp. 2d 747, 750 (E.D.N.C. 2011) ( finding that "the substantive law of the circuit where a [p]etitioner was convicted controls his habeas petition."); *see also Bender v. Carter*, No. 5:12CV165, 2013 WL 5636745, at *2 (N.D.W. Va. Oct. 15, 2013), *aff'd*, 564 F. App'x 694 (4th Cir. 2014) (finding that the substantive law of the court of

conviction should apply to § 2241 petition, but procedural law of reviewing court should govern its application); *Morgenstern v. Andrews*, No. 5:12-HC-2209-FL, 2013 WL 6239262, at \*3 (E.D.N.C. Dec. 3, 2013), *aff'd*, 569 F. App'x 158 (4th Cir. 2014) ("Thus, the court finds that the Eleventh Circuit's substantive law governs the 'savings clause' analysis in this action."); *Perkins v. Vereen*, No. 8:19-CV-0047-MGL-JDA, 2019 WL 1411105, at \*3 (D.S.C. Feb. 4, 2019), *report and recommendation adopted*, No. CV 8:19-0047-MGL, 2019 WL 1405824 (D.S.C. Mar. 28, 2019) (applying the substantive law of the court of conviction to a § 2241 petition).

The Fourth Circuit recently considered this issue when reviewing a § 2241 petition by a petitioner who was convicted in the Eleventh Circuit, but brought the petition in a federal district court in North Carolina due to his incarceration within the state. *See Moss v. Atkinson*, No. 18-6096, 2019 WL 1766996, at \*1 (4th Cir. Apr. 19, 2019) (unpublished). The Fourth Circuit determined that the petitioner could not meet the savings clause requirement "because his sentence is still legal under Eleventh Circuit law." *Id.* at \*2. The Fourth Circuit went on to note that "[t]his court has not definitively resolved whether a petitioner sentenced out of circuit must show that his sentence is illegal under the sentencing circuit's law or our circuit's law," but determined, without expressly deciding the issue, that in the case before it the Eleventh Circuit's substantive law should apply because the parties agreed Eleventh Circuit law should apply, and "applying our court's substantive law likely wouldn't change the outcome." *Id.* at \*2 n.1.

### 1. Ability to challenge guidelines error in habeas review

As an initial matter, Respondent contends that because Petitioners are challenging an advisory Guidelines assessment, they are unable to meet the "fundamental defect" requirement of the savings clause. (ECF No. 15 at 7). Respondent cites to cases from the

Fourth and Seventh Circuits in support of his argument. (*Id.* at 7-8) (citing *United States v. Foote*, 784 F.3d 931 (4th Cir. 2015) and *Roberts v. Krueger*, No. 218CV00045WTLMJD, 2018 WL 6110933, at *1 (S.D. Ind. Nov. 21, 2018)). Petitioners disagree with Respondent's conclusion and specifically argue that *Foote* does not apply as it is Fourth Circuit law. In contrast, they rely on a decision from the Seventh Circuit in support of their position. (ECF No. 18 at 27) (citing *Brown v. Caraway*, 719 F.3d 583 (7th Cir. 2013)).

In *United States v. Foote*, the Fourth Circuit noted that "not every alleged sentencing error can be corrected on collateral review." *Id.* "[O]nly those errors presenting a 'fundamental defect which inherently results in a complete miscarriage of justice' are cognizable." *Id.* (quoting *Davis v. United States*, 417 U.S. 333, 346 (1974)). The Fourth Circuit considered whether a petitioner's habeas challenge to his sentence, which was based on a subsequently-nullified career offender designation, was a "fundamental defect" sufficient to merit review on a motion to vacate. *See* 784 F.3d at 932. Ultimately, the Fourth Circuit declined to "declare that a fundamental defect or a complete miscarriage of justice has occurred in a situation in which [the petitioner] was (and on remand, would again be) sentenced under an *advisor*y Guidelines scheme requiring individualized analysis of the sentencing factors set forth in 18 U.S.C. § 3553(a)." *Id.* at 941 (emphasis original). The Fourth Circuit based its determination largely on the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005). which "'stripped [the Guidelines] of legal force and made them advisory.'" *Id.* at 942 (quoting *United States v. Dean*, 604 F.3d 169, 173 (4th Cir. 2010)) (brackets in original). "Because of this lack of '"legal force,"'" the Fourth Circuit determined it "would be remiss to place an erroneous Guidelines classification under an advisory scheme in the same

category as violation of a statute or constitutional provision." *Id*. The Fourth Circuit later affirmed that the advisory nature of the Guidelines renders an error in calculation a non-fundamental defect. *See Lester v. Flournoy,* 909 F.3d 708, 715 (4th Cir. 2018) *(*error in guidelines calculation was fundamental error where petitioner sentenced under pre-*Booker* mandatory guidelines, but "*Foote* undoubtedly would bar [the petitioner's] petition had he been sentenced under the advisory Guidelines."); *see also Kornegay v. Warden, FCI Butner,* 748 F. App'x 513, 514 (4th Cir. 2019) (denying § 2241 petition because "[the petitioner] was sentenced under the advisory Guidelines and *Foote* bars his petition.") (unpublished).

Petitioners' argument that *Foote* does not apply is mistaken for two reasons. First, the question of whether or not a claim of error is a "fundamental defect" as required to meet the savings clause requirement is governed by Fourth Circuit *procedural* law as set out in *Wheeler*. 886 F.3d at 429. While Seventh Circuit substantive law may apply to Petitioners' claims, this Court is still governed by the requirements of the Fourth Circuit in determining whether the petition is able to clear the procedural hurdles that are imposed on petitioners seeking to utilize § 2241 to challenge the validity of their sentence. *See Bender*, No. 5:12CV165, 2013 WL 5636745, at *2 (rejecting the petitioner's argument that the court erred by employing *Wheeler* when determining whether the petitioner met the savings clause requirements); *Moss,* No. 18-6096, 2019 WL 1766996, at *2 (applying Eleventh Circuit substantive law, but using the *Wheeler* test to determine whether the petitioner met the savings clause). Accordingly, Fourth Circuit precedent governs whether a claim of advisory Guidelines error presents a "fundamental defect" sufficient to be cognizable on collateral review under the fourth prong of the *Wheeler* test. Thus, contrary to Petitioners' assertion, the decision in *Foote* applies to their claim.

Second, even assuming that Petitioners are correct and Seventh Circuit law governs their ability to raise an advisory Guidelines sentencing error claim in a § 2241 petition, the Seventh Circuit has also declined to find such an error a fundamental defect. Petitioners argue that the Seventh Circuit decision, *Brown v. Caraway*, 719 F.3d 583 (7th Cir. 2013), establishes that they may raise a Guidelines error claim in a habeas proceeding. (ECF No. 18 at 27-28). However, *Brown* dealt with the misapplication of the sentencing Guidelines in the pre-*Booker* era, when they were still mandatory. *See* 719 F.3d at 588. When it comes to the misapplication of the *advisory* Guidelines, the Seventh Circuit has agreed with the Fourth that such an error does not represent a fundamental defect in the sentence as required for collateral review. *See Hawkins v. United States*, 706 F.3d 820, 824 (7th Cir. 2013).[1]

Petitioners were sentenced in 2010, well after the 2005 *Booker* decision, and consequently were not subject to the mandatory application of the Guidelines. *Hatfield I,* Case No. 3:08-cr-30020-DRH-PMF at ECF Nos. 330, 336. As the § 2D1.1(d)(1) enhancement employed by the District Court was used to calculate an advisory, not mandatory, Guidelines range and did not operate to impose a sentence above the statutory maximum, Petitioners are unable to present "an error sufficiently grave to be deemed a fundamental defect" as required to utilize the savings clause. *See Wheeler*, 886 F.3d at 429; *Foote,* 784 F.3d at 941. Accordingly, the undersigned **FINDS** that Petitioners fail to establish that they meet the requirements of the savings clause as contained in § 2255(e); as a result, they are precluded from bringing their claim in a § 2241 petition.

---

[1] The Seventh Circuit later supplemented, but did not substantially change, the initial decision in *Hawkins* in an opinion explaining why a majority of the panel did not believe the Supreme Court decision in *Peugh v. United States*, 569 U.S. 530, (2013) warranted rehearing. *See Hawkins v. United States*, 724 F.3d 915, 916 (7th Cir. 2013).

### 2. Law was correctly applied and has not changed

Even if Petitioners were able to seek collateral relief for their claimed Guidelines error, they would still be unable to meet the requirements of the savings clause as there has been no subsequent change in the law which renders their sentence, valid at the time it was applied, now invalid. *Wheeler*, 886 F.3d at 429. Petitioners' argument that their sentence is now unlawfully imposed rests primarily on three cases: *Burrage, Lawler,* and *Nelson*. These cases will be considered in turn below.

*i.) Burrage is not applicable to Petitioners' Guidelines enhancement*

In *Burrage*, the Supreme Court considered the statutory sentence enhancement contained in § 841(b)(1)(C). *See* 571 U.S. at 207. Section 841(b)(1)(C) authorizes a life sentence and imposes a 20-year mandatory minimum sentence when a defendant is convicted of illegally distributing certain controlled substances under § 841(a)(1) "if death or serious bodily injury results from the use of such substance." 21 U.S.C.A. § 841(b)(1)(C). The Supreme Court first determined that "[b]ecause the 'death results' enhancement increased the minimum and maximum sentences to which [the petitioner] was exposed, it is an element that must be submitted to the jury and found beyond a reasonable doubt." *Burrage,* 571 U.S. at 210. The Supreme Court also concluded that the statutory term "results from" meant that the government must establish the drugs distributed by a defendant were a "but-for" cause of death in order to obtain a conviction under § 841(b)(1)(C). *Id.* at 218-19. The Seventh Circuit later concluded that *Burrage* created a new substantive rule which must be applied to cases on collateral review. *Krieger*, 842 F.3d at 500.

The cross-reference for the murder enhancement provision contained in § 2D1.1(d)(1) states as follows:

(d) Cross References

(1) If a victim was killed under circumstances that would constitute murder under 18 U.S.C. § 1111 had such killing taken place within the territorial or maritime jurisdiction of the United States, apply § 2A1.1 (First Degree Murder) or § 2A1.2 (Second Degree Murder), as appropriate, if the resulting offense level is greater than that determined under this guideline.

U.S.S.G. 2D1.1(d)(1). Section 2A1.1 mandates a base offense level of 43 "when death results from the commission of certain felonies," such as those that contain a cross-reference for murder. U.S.S.G. 2A1.1(a)(1).

The decision in *Burrage* is simply not applicable to Petitioners' case, as they were not sentenced under the penalty provision of § 841(b)(1)(C). Instead, following the remand of the convictions under that section by the Seventh Circuit, the United States elected to dismiss the portions of the indictment dealing with violations of that section and proceed solely on the remaining portions of Counts One and Two. *Hatfield I,* Case No. 3:08-cr-30020-DRH-PMF at ECF No. 281. Petitioners were subsequently sentenced within the statutory maximum provided by Counts One and Two, without the application of the statutory enhancements provided by § 841(b)(1)(C). *Id.* at ECF Nos. 330, 336. While the District Court did conclude that Petitioners had caused the death of several individuals, it did so in the course of determining that Petitioners were subject to the cross-reference for murder enhancement provided by § 2D1.1(d)(1), not in applying Section 841(b)(1)(C)'s statutory penalty enhancement. *Id.* at ECF No. 352 at 33-34, 36.

The Seventh Circuit has considered Petitioners' argument that a sentencing court must apply the *Burrage* "but-for" standard when determining the applicability of a cross-reference for murder enhancement, and rejected it. *See Camacho v. English*, 872 F.3d 811, 814 (7th Cir. 2017), *cert. denied*, 138 S. Ct. 1028 (2018) ("Moreover, [the petitioner] was not sentenced pursuant to the 'death results' provision in 18 U.S.C. § 1201(a); he was

23

sentenced pursuant to the cross-reference provision for murder contained in U.S.S.G. § 2A4.1(c). ... Therefore, we agree with the district court that *Burrage* is not applicable to [the petitioner's] § 2241 petition."). A district court in the Fourth Circuit has reached the same conclusion. *See Perez-Colon v. O'Brien*, No. 1:14CV119, 2016 WL 7168186, at *6 (N.D.W. Va. Dec. 8, 2016), *aff'd as modified*, 747 F. App'x 167 (4th Cir. 2019) ("That decision [*Burrage*] does not apply here, where the district court applied a sentencing enhancement, not a finding under § 841(b)(1)(C).").

*Burrage* dealt with what must be proven to subject a defendant to the statutory minimum and maximum penalties permitted under § 841(b)(1)(C). It did not change the law regarding an advisory Guidelines enhancement, which did not affect the statutory maximum or minimum sentence to which Petitioners were exposed. Moreover, to the extent that this Court should apply the substantive law of the Seventh Circuit to Petitioners' claim, the Seventh Circuit has already determined that *Burrage* is not applicable to Petitioners' case. *See Everly K. Hatfield v United States,* Case No. 17-1983, Document No. 2; *Rex. I. Hatfield v. United States,* Case No. 17-1982, Document No. 2.

Therefore, the undersigned **FINDS** Petitioners' argument that they are entitled to utilize the savings clause based on the decision in *Burrage* to be unavailing.

*ii.) Lawler did not change the law regarding Petitioners' Guidelines enhancement*

In *Lawler*, the Seventh Circuit considered the application of the Guidelines enhancement contained in USSG § 2D1.1(a)(2), which raises the base level offense of a crime and applies when a defendant is convicted under certain statutes involving the distribution of controlled substances where "the offense of conviction establishes that death or serious bodily injury resulted from the use of the substance." USSG § 2D1.1(a)(2); *Lawler,* 818 F.3d at 282. The Seventh Circuit found that a district court's determination

24

by a preponderance of evidence that § 2D1.1(a)(2) applied was reversible error as "§ 2D1.1(a)(2) applies only when a resulting death (or serious bodily injury) was an element of the crime of conviction, proven beyond a reasonable doubt or admitted by the defendant." *Lawler,* 818 F.3d at 285. The Seventh Circuit's decision was expressly based on the particular language of § 2D1.1(a)(2) "which by its text applies only when the 'offense of conviction establishes' that death resulted." *Id.* at 283. The Seventh Circuit noted that:

> The Guidelines make clear that "offense of conviction" and "offense" have different meanings. Specifically, § 1B1.1 n. 1 defines "offense" to mean "offense of conviction" plus "all relevant conduct." And "relevant conduct" means "all acts and omissions ... that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense[.]" Together these provisions show that: (1) "offense of conviction" does not include "relevant conduct"; and (2) "offense of conviction" is narrower than "offense."

*Id.* at 284 (citations omitted). The Seventh Circuit found it "important" that "numerous Guidelines provisions turn on the actual consequences of the defendant's 'offense,'" while § 2D1.1(a)(2) "looks only to what is 'establishe[d]' by the defendant's 'offense of conviction.'" *Id.* at 283-84 (brackets original).

Petitioners were subject to the Guidelines enhancement contained in § 2D1.1(d)(1), ***not*** § 2D1.1(a)(2). The Guidelines provision under which Petitioners were sentenced does not contain language requiring that "the offense of conviction" include a resulting death, rather it applies "when death results from the commission of certain felonies," and when those "*offenses involv[e]* premediated killing." U.S.S.G. 2A1.1(a)(1) and (2)(A) (emphasis added). The requirement that "death results from" the commission of a felony is less restrictive than requiring that death necessarily be established as an element of the offense of conviction. Thus, the decision in *Lawler,* which was tied to the specific text of

§ 2D1.1(a)(2), is not applicable given that the text crucial to the *Lawler* decision was not present in the provision under which Petitioners were sentenced.

Moreover, the Seventh Circuit has explicitly held that the proper standard for applying the cross-reference contained in § 2D1.1(d)(1) is the "preponderance of the evidence" standard. *See United States v. Mitchell,* 635 F.3d 990, 992-93 (7th Cir. 2011). In *Mitchell,* the defendant asked the Seventh Circuit to hold that the district court erred by finding the murder cross-reference contained in § 2D1.1(d)(1) applied by a preponderance of evidence. *Id.* The Seventh Circuit rejected the claim, stating that it was constrained by circuit precedent from holding that a higher standard than preponderance of the evidence was required. *Id.* at 993 (citing *United States v. Reuter*, 463 F.3d 792, 793 (7th Cir.2006); *United States v. Pira*, 535 F.3d 724, 728 (7th Cir.2008); *United States v. Santiago*, 495 F.3d 820, 824 (7th Cir.2007); *United States v. McMahan*, 495 F.3d 410, 424 (7th Cir.2007)). The Seventh Circuit acknowledged that while there was a circuit split on the proper standard of proof for certain Guidelines enhancements, its conclusion that a preponderance of the evidence standard applied was "firmly in the majority camp on this issue." *Id.* at n.2 (collecting cases).

If the *Lawler* Court had intended its analysis to apply more broadly than to the specific enhancement at issue, § 2D1.1(a)(2), and meant to overturn the precedent discussed in *Mitchell*, then the Court would have explicitly said so; particularly, in view of extensive Seventh Circuit precedent holding that the preponderance of the evidence standard is appropriate for Guidelines enhancements such as the one contained in § 2D1.1(d)(1). *See* 818 F.3d at 283-285. Indeed, it is clear that the holding in *Lawler* does not extend to the Guidelines provision considered by the District Court in Petitioners' case and did not overturn the clear Seventh Circuit precedent.

The Fourth Circuit also has held that the existence of facts necessary for §
2D1.1(d)(1) to apply may be found at sentencing by a preponderance of the evidence. *See
United States v. Gibson*, 328 F. App'x 860, 865 (4th Cir. 2009) ("The court accepted the
evidence presented and, using the preponderance of evidence standard, found it
appropriate to apply the first degree murder cross reference under U.S.S.G. §
2D1.1(d)(1).") (unpublished); *see also United States v. Davis*, 679 F.3d 177, 182 (4th Cir.
2012) ("It is well-settled that the Government has the burden to prove a cross-referenced
offense by a preponderance of the evidence..."). In the instant case, the District Court
found that the cross-reference applied to Petitioners by "clear and convincing evidence,"
thus employing an even more rigorous standard of proof than that required by established
law. *Hatfield I,* Case No. 3:08-cr-30020-DRH-PMF at ECF No. 352 at 33-34.

Accordingly, the undersigned **FINDS** Petitioners' argument that the decision in
*Lawler* retroactively changed the law, rendering their sentences invalid, to be lacking in
merit. As such, this argument does not entitle Petitioners to utilize the savings clause.

*iii.) Nelson is inapplicable to Petitioners' case*

In their Reply, Petitioners state that the 2017 Supreme Court case, *Nelson v.
Colorado*, entitles them to relief. (ECF No. 18 at 14-15). In *Nelson v. Colorado*, the
Supreme Court considered whether when a criminal conviction is later invalidated
without the possibility of retrial, the state is obligated to refund fees, court costs, and fines
imposed on the defendant as a result of the, now invalid, conviction. *See* 137 S. Ct. at 1252.
The Supreme Court determined that it was, and that the state's requirement that those
seeking restitution for fines imposed as the result of an invalidated conviction had to
prove their innocence by clear and convincing evidence in a separate proceeding did not
comply with the procedural due process requirements established by *Mathews v.*

*Eldridge*, 424 U.S. 319 (1976). *Id.* at 1255. The *Nelson* Court based its decision on the fact that "once [the] convictions were erased, the presumption of [the petitioners'] innocence was restored." *Id.* Thus, the state had no legal right to retain the funds based on invalid convictions and "may not presume a person, adjudged guilty of no crime, nonetheless guilty *enough* for monetary exactions." *Id.* at 1256 (emphasis original).

Petitioners believe they were punished in violation of the prohibition created by *Nelson,* which forbids the state from penalizing defendants based on invalidated convictions, as they were acquitted of the "death resulting" convictions under § 841(b)(1)(C), but subjected to a Guidelines enhancement based on the same conduct. (ECF No. 18 at 15). *Nelson*, however, is not applicable here as the District Court did not rely on the vacated convictions under § 841(b)(1)(C) when applying the cross-reference for murder enhancement. Instead, the District Court made an independent finding that Petitioners had caused the deaths of several individuals while committing the felonies for which they were being sentenced. *Hatfield I,* Case No. 3:08-cr-30020-DRH-PMF at ECF No. 352 at 33. The Seventh Circuit has previously considered the argument Petitioners raise, both before and after *Nelson*, and concluded that it lacks merit, explaining that "a person whose acquitted conduct is considered at sentencing is not *punished* for a crime of which he has not been convicted." *United States v. Waltower*, 643 F.3d 572, 574 (7th Cir. 2011) (emphasis original). To the contrary, "he is punished for the crime he did commit; and because the sentencing guidelines direct judges to look at the characteristics of the offense, relevant conduct proved by a preponderance standard can include acquitted conduct." *Id.* (citing *United States v. Watts*, 519 U.S. 148, 156–57, (1997)); *see also United States v. King*, 910 F.3d 320, 329 (7th Cir. 2018), *reh'g denied* (Jan. 4, 2019), *cert. denied sub nom. Hoskins v. United States*, 139 S. Ct. 1468 (2019) ("Acquitted or

uncharged offenses constitute relevant conduct if they 'occurred during the commission of the offense of conviction.'")(quoting U.S.S.G. § 1B1.3(a)(1)). The Fourth Circuit has reached the same conclusion. *See United States v. Young*, 609 F.3d 348, 357 (4th Cir. 2010) (holding that when determining the appropriate sentence, "the district court may consider acquitted conduct, so long as the court determines that the conduct was established by a preponderance of the evidence.").

In addition, Petitioners' argument that *Nelson* retroactively invalidates their sentences is groundless given that the decision in *Nelson* did not affect the well-settled case law establishing that sentencing courts may consider relevant conduct, even acquitted conduct, when determining the appropriate sentence for validly imposed convictions. *See Fortenberry v. Ormond*, No. 3:18CV294, 2019 WL 1869854, at *3 (E.D. Va. Apr. 25, 2019) ("Contrary to [the petitioner's] suggestion here, *Nelson* simply has no bearing on a court's ability to consider relevant conduct during sentencing or the applicability of a sentencing enhancement under the United States Sentencing Guidelines."); *see also Scott v. Entzel*, No. 2:18CV18, 2018 WL 2125990, at *3 (N.D.W. Va. Apr. 17, 2018), *report and recommendation adopted*, No. 2:18-CV-18, 2018 WL 2123617 (N.D.W. Va. May 8, 2018) (dismissing § 2241 petition based on *Nelson* as "the presumption of innocence is not a newly announced substantive rule of law."); *Whitfield v. United States*, No. 18 C 1870, 2018 WL 3993809, at *5 (N.D. Ill. Aug. 21, 2018) (*Nelson* did not overrule long-standing precedent that a district court may consider relevant acquitted conduct at sentencing). The District Court in Petitioners' case concluded by clear and convincing evidence that Petitioners had caused the deaths of others during the course of committing the felonies for which they were convicted and sentenced them accordingly.

Therefore, the undersigned **FINDS** that Petitioners are not able to utilize the savings clause based on their claim that *Nelson* retroactively invalidates their sentences, as the legality of Petitioners' sentences has not changed.

*iv.) Inappropriate grouping*

In their Reply, Petitioners raise a new claim, arguing that the District Court erred in applying the murder cross-reference as it was not "relevant conduct" as defined by the Guidelines. (ECF No. 18 at 18-19). Petitioners rely primarily on two Fourth Circuit cases in support of their argument, *United States v. Horton*, 693 F.3d 463 (4th Cir. 2012), and *United States v. Sellers*, 512 F. App'x 319 (4th Cir. 2013). (*Id.* at 16, 18). These cases do not entitle Petitioners to utilize the savings clause, however, as Petitioners do not meet the second *Wheeler* requirement which necessitates a showing that "subsequent to [a petitioner's] direct appeal and first § 2255 motion, the aforementioned settled substantive law changed and was deemed to apply retroactively on collateral review." *See* 886 F.3d at 429. The cases relied on by Petitioners were decided in 2012 and 2013, and Petitioners' first § 2255 motions did not conclude until October 2014. *Hatfield V*, No. 3:12-CV-01111-DRH, 2014 WL 5023201, at *1; *Hatfield VI*, No. 3:12-CV-01110-DRH, 2014 WL 5023623, at *1. Petitioners do cite at-length to a 2018 Supreme Court decision, *Rosales-Mireles v. United States*, 138 S. Ct. 1897 (2018). (ECF No. 18 at 20-23). However, they do so only to support their argument that, assuming there was in fact an appreciable Guidelines error, it would be subject to correction by this Court. (*Id.*). *Rosales-Mireles* considered the proper application of Federal Rule of Criminal Procedure 52(b) to a non-preserved Guidelines error on direct appeal, and is not relevant to Petitioners' § 2241 claim. *See* 138 S. Ct. at 1903.

In addition to the fact that the cases cited by Petitioners do not establish a subsequent change in law as required by *Wheeler*, the cases are not relevant to Petitioners' claim. The guideline pertaining to "relevant conduct," USSG § 1B1.3(a), states in pertinent part, that the application of a cross-reference shall be determined on the basis of:

> (1)(A) all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant; and
> ...
> that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense.
>
> (2) solely with respect to offenses of a character for which § 3D1.2(d) would require grouping of multiple counts, all acts and omissions described in subdivisions (1)(A) and (1)(B) above that were part of the same course of conduct or common scheme or plan as the offense of conviction;....

U.S.S.G. § 1B1.3(a). Petitioners were convicted of conspiring to commit pharmacy burglaries and conspiring to distribute controlled substances. The District Court concluded that the relevant deaths were caused "in furtherance of [Petitioners'] drug distribution organization." *Hatfield I,* Case No. 3:08-cr-30020-DRH-PMF at ECF No. 352 at 40, 43. The District Court further found that the murders occurred during the course of the conspiracies, and in an attempt to prevent the victims from testifying against Petitioners. *Id.* 48, 52. As the murders were found specifically to have been committed both during the course of the offense of conviction, and in order to avoid detection or responsibility for that offense, they fall under subsection (a)(1) of the relevant conduct guideline, which requires that the conduct have been committed during, in preparation for, or in attempt to escape responsibility for, the underlying convictions. *See* § 1B1.3(a)(1). This makes Petitioners' case dissimilar to either *Sellers,* or *Horton*, as those cases considered whether the relevant conduct at issue was subject to "grouping" under

subsection (a)(2) solely because the allegedly relevant conduct was too attenuated from the underlying counts of conviction to be considered under subsection (a)(1)—a section that requires a closer connection between the conduct and the underlying conviction. *See Sellers*, 512 F. App'x at 331 (evidence showed murder was unrelated to underlying drug conspiracy); *Horton*, 693 F.3d at 476 (government did not attempt to contend that conduct fell under subsection (a)(1)). As the District Court in Petitioners' case appropriately found that the relevant conduct fell within subsection (a)(1), it was not necessary to consider whether the conduct was subject to "grouping" under subsection (a)(2). *See United States v. Ashford,* 718 F.3d 377, 383 (4th Cir. 2013) (when act satisfies requirements of subsection (a)(1), analysis under subsection (a)(2)'s grouping requirements is unnecessary).

Accordingly, the undersigned **FINDS** that Petitioners' claim that the cross-reference for murder was inappropriately applied does not permit Petitioners to employ the savings clause, because (1) it relies on cases that occurred before the conclusion of their first § 2255 petition, and (2) the cases do not call into question the validity of Petitioners' sentences.

   *v.) Double counting*

Finally, Petitioners briefly introduce an additional claim in their Reply, arguing that enhancements for both obstruction of justice and for murder by cross-reference amounted to impermissible "double counting." (ECF No. 18 at 28). Petitioners cite to a single 2005 Seventh Circuit case, *United States v. White*, 406 F.3d 827 (7th Cir. 2005), in support of their argument. (*Id.*). As above, this claim fails to meet the second requirement of *Wheeler* as it is based on a decision that was issued well before Petitioners' sentence became final. *See* 886 F.3d at 429. Moreover, the Seventh Circuit has since expressly

stated, "that double counting is generally permissible unless the text of the guidelines expressly prohibits it." *United States v. Vizcarra*, 668 F.3d 516, 519 (7th Cir. 2012). *Vizcarra* dismissed *White's* discussion of double counting as "dicta" and concluded that the Guidelines do not prohibit identical conduct resulting in multiple enhancements. 668 F.3d at 523 n.2. Thus, established law at the time Petitioners' § 2255 motions were concluded permitted the enhancements to be applied, and Petitioners fail to point to a subsequent change in law which renders their sentence invalid.

As such, the undersigned **FINDS** that Petitioners' claim that the District Court engaged in impermissible "double counting" fails to establish they are entitled to use the savings clause.

In summary, the undersigned has considered all of Petitioners' claims and concluded they do not meet the requirements of the savings clause; therefore, the undersigned **FINDS** that Petitioners are unable to attack the validity of their sentence using § 2241 and, consequently, this Court lacks jurisdiction to consider the motion.

### B. The Petition as a § 2255 Motion

Considering that Petitioners' claims are not properly brought under § 2241, the petition "must either be dismissed or construed as a section 2255 motion." *Pack v. Yusuff*, 218 F.3d 448, 452 (5th Cir. 2000). If the Court chooses to dismiss Petitioners' action, then they will be required to pursue their claim in the United States District Court for the Southern District of Illinois. Unlike § 2241 petitions, which are brought in the district where the petitioner is incarcerated at the time that he files his petition*, see United States v. Poole,* 531 F.3d 263, 264 (4th Cir. 2008), section 2255 directs the movant to "move the court which imposed the sentence" to vacate, set aside, or correct the sentence. 28 U.S.C. § 2255(a).

The Court could construe Petitioner's petition as a § 2255 motion and transfer it to the sentencing court; however, the undersigned **FINDS** no purpose in this exercise. Petitioners' apparent lack of authorization from the Seventh Circuit to file a successive § 2255 motion, as required by § 2255(h) and 28 U.S.C. § 2244(b)(3)(A), eliminates any benefit to be gained from a transfer this matter the sentencing court. *See Harris v. Hogsten*, No. 1:13-11595, 2013 WL 6008496, at *2 (S.D.W. Va. Nov. 13, 2013); *Satcher v. Hogsten*, No. 1:13-0466, 2013 WL 5674856, at *2 (S.D.W. Va. Oct. 17, 2013); *see also United States v. Winestock*, 340 F.3d 200, 205 (4th Cir. 2003) ("In the absence of pre-filing authorization, the district court lacks jurisdiction to consider an application containing abusive or repetitive claims.").

As an alternative, this Court may exercise its authority under 28 U.S.C. § 1631, recharacterize the petition as a motion for pre-filing authorization, and transfer it to the Seventh Circuit for consideration. Title 28 U.S.C. § 1631 provides as follows:

> Whenever a civil action is filed in a court ... and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action ... to any other such court in which the action ... could have been brought at the time it was filed ... and the action ... shall proceed as if it had been filed in ... the court to which it is transferred on the date upon which it was actually filed in ... the court from which it is transferred.

Notably, the Fourth Circuit has declined to impose "a blanket policy of mandatory transfer of unauthorized successive petitions to th[e] court for consideration as [pre-filing authorization] motions;" instead, leaving district courts the discretion to determine whether the transfer of an unauthorized successive petition is "in the interest of justice." *Jones v. Braxton*, 392 F.3d 683, 691 (4th Cir. 2004). A district court may dismiss, rather than transfer, a petition that is meritless or time-barred. *United States v. McNeill*, 523 F. App'x 979, 984 (4th Cir. 2013) (citing *Phillips v. Seiter*, 173 F.3d 609, 610–11 (7th Cir.

1999)) (stating that the transfer of a frivolous, time-barred case is a waste of judicial resources) and *Galloway Farms, Inc. v. United States*, 834 F.2d 998, 1001 (Fed. Cir. 1987) (declining to transfer claims under § 1631 that were frivolous). The Seventh Circuit, likewise, requires a district court weighing transfer under § 1631 to first "take a peek at the merits." *Phillips*, 173 F.3d at 610-11. "If [this] limited review reveals that the case is a sure loser in the court that has jurisdiction," the Seventh Circuit asks the district court considering the petition to "dismiss the case rather than waste the time of another court." *Id.* at 611.

For an appellate court to grant a petitioner's request to file a second or successive § 2255 motion, the motion must contain:

> (1) newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense; or

> (2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.

28 U.S.C. § 2255(h); *see also Winestock,* 340 F.3d at 205. In considering whether a pre-filing authorization motion should be granted, the Fourth Circuit considers "whether the applicant made the requisite prima facie showing about a new rule of constitutional law," and whether the successive motion would be time-barred. *In re Vassell*, 751 F.3d 267, 270-71 (4th Cir. 2014). Here, "tak[ing] a peek at the merits" of Petitioners' claim, it appears that a transfer is not warranted because Petitioners do not meet the requirements of 28 U.S.C. § 2255(h). *Phillips*, 173 F.3d at 610.

*i.) Claims based on Lawler, Burrage, and Krieger*

The undersigned need not speculate as to how the bulk of Petitioners' arguments

would fare if transferred to the Seventh Circuit. The Seventh Circuit has previously considered and dismissed the claims Petitioners attempt to raise. The Seventh Circuit dismissed Petitioners' claim that *Burrage* entitled them to habeas relief on May 16, 2017, finding that it was not new law with respect to their case, and, in any event, not applicable to their sentences. *Everly K. Hatfield v United States,* Case No. 17-1983, Document No. 2; *Rex. I. Hatfield v. United States,* Case No. 17-1982, Document No. 2. The Seventh Circuit later affirmed the District Court's dismissal of Petitioners' construed § 2255 petition which argued that *Lawler* and *Krieger* afforded Petitioners relief, finding that Petitioners failed to make "a substantial showing of the denial of a constitutional right in either case." *Rex. I. Hatfield v. United States,* Case No. 17-3406, Document No. 17. As such, to transfer to the Seventh Circuit claims which it has already considered and rejected would be, without a doubt, a waste of judicial resources. As the Seventh Circuit has directly considered and rejected Petitioners' claims for relief based on the decisions in *Burrage, Lawler,* and *Krieger*, the undersigned **FINDS** that transfer of the petition based on these claims is not warranted under § 1631 as such a transfer would be frivolous.

 *ii.) Claim based on Nelson*

  The Seventh Circuit has not yet directly considered Petitioners' claim that the Supreme Court decision in *Nelson* entitles them to relief. However, a transfer of the petition based on this claim would be plainly futile. As noted above, *Nelson* did not create a new rule of law, constitutional or otherwise, as "the presumption of innocence is not a newly announced substantive rule of law." *Scott,* No. 2:18CV18, 2018 WL 2125990, at *3. Moreover, courts in the Seventh Circuit have found that the *Nelson* decision does not affect a sentencing court's ability to consider uncharged or acquitted conduct under the Guidelines. *See United States v. Verduzco Velazquez*, No. 1:14-CR-38-HAB, 2019 WL

2076596, at *2 (N.D. Ind. May 9, 2019) ("[*Nelson*] did not overturn the long-standing rule that courts can consider uncharged conduct, so long as that conduct has been proved by a preponderance of the evidence and fits within the definition of relevant conduct."); *see also Whitfield*, No. 18 C 1870, 2018 WL 3993809, at *5 (same). As discussed above, the decision in *Nelson* is simply not applicable to Petitioners' Guidelines enhancements.

Accordingly, the undersigned **FINDS** that transfer of Petitioners' misfiled § 2255 petition based on this claim is not appropriate as Petitioners would be unable to meet the requirements of § 2255(h).

### iii.) Claim based on improper grouping

Petitioners' contention that the District Court improperly grouped irrelevant conduct when assigning an enhancement under § 2D1.1(d)(1) likewise fails to meet the requirements of § 2255(h). As noted above, Petitioners base their argument on two Fourth Circuit cases that were decided before the expiration of Petitioners' first § 2255 petition and, for that reason, do not establish a "new rule" of constitutional law made retroactive by the Supreme Court as required by § 2255(h)(2). (ECF No. 18 at 16-19). Additionally, as previously discussed, the decisions are not relevant to Petitioners' case. Allowing Petitioners' claim to proceed to the Seventh Circuit on the basis of Fourth Circuit decisions which are neither new, nor relevant, would be a frivolous exercise.

Accordingly, the undersigned **FINDS** that transfer under § 1631 is not warranted for this this claim.

### iv.) Claim based on inappropriate double counting

As is the case regarding the claim of improper grouping, Petitioners' claim that they were subject to impermissible "double counting" is not based on a new rule of constitutional law made retroactive by the Supreme Court. Petitioners cite to a single

2005 Seventh Circuit decision in support of their argument. (ECF No. 18 at 28). As this claim is not based on new law, there would be an insufficient basis to support the authorization to file a second or successive § 2255 petition. Moreover, as noted in the savings clause analysis, the Seventh Circuit has dismissed as dicta the double counting analysis contained in the decision cited by Petitioners and expressly held that double counting is generally permissible under the Guidelines. *Vizcarra*, 668 F.3d at 523 n.2 (citing *White*, 406 F.3d at 833).

Accordingly, the undersigned **FINDS** that transfer of Petitioners' petition based on this claim is not warranted as the claim is clearly meritless.

The undersigned has considered all of Petitioners' claims and concluded that they do not meet the requirements for successive petitions contained in § 2255(h). Furthermore, Petitioners do not argue they are subject to any equitable exception to the statutory barriers. Therefore, the undersigned **FINDS** that transfer of the petition pursuant to § 1631 would not be "in the interest of justice," *Jones,* 392 F.3d at 691, leaving dismissal as the only appropriate result.

### III.  <u>Proposal and Recommendations</u>

For the aforementioned reasons, the undersigned respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that Petitioners' Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241, (ECF No. 1), be **DENIED;** that Respondent's Motion to Dismiss, (ECF No. 14), be **GRANTED;** and that this action be **DISMISSED,** with prejudice, and removed from the docket of the court.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Irene C. Berger, United

States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, Petitioner shall have fourteen days (filing of objections) and three days (if received by mail) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing party, Judge Berger, and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to the parties and any counsel of record.

**FILED:** June 7, 2019

Cheryl A. Eifert
United States Magistrate Judge